481 P.2d 403

**Cecil Clyde NELSON, Jr., Plaintiff-Appellant,**

v.

**Zelma Lee NELSON, Defendant-Appellee.**

**No. 9072.**

Supreme Court of New Mexico.

Feb. 22, 1971.

Harry L. Patton, Clovis, for plaintiff-appellant.

Dan B. Buzzard, Clovis, for defendant-appellee.

OPINION

STEPHENSON, Justice.

This is an appeal by Plaintiff-Appellant (Husband) from an adjudication by the District Court of Roosevelt County that he was in contempt for failure to pay a

community debt which the court had ordered him to pay in a divorce decree.

The appeal involves the question of whether a subsequent discharge in bankruptcy excuses noncompliance with the court's order in circumstances where the debt in question was not discharged by the bankruptcy proceedings and was enforced against the wife.

The chain of events and circumstances which bring this case before us can be summarized as follows:

A. The decree of divorce was entered on August 26, 1969. With minor exceptions, Husband was awarded the community property and ordered to pay the community debts, one of which was an obligation to the Internal Revenue Service (IRS) apparently for 1967 federal income taxes. The decree also required Wife to pay Husband $750.00 in relation to some farm and irrigation equipment which was Wife's separate property and $630.00 for labor on Wife's farm in preparing it for the current crop year. No mention is made of Wife's car. No appeal was taken.

B. On August 28, 1969, Husband filed a debtor's petition in Federal District Court seeking a discharge in bankruptcy. Schedules attached to the petition, inter alia, mentioned the tax liability and to Wife a "contingent liability on debts listed herein: $10.00."

C. Also on August 28, 1969, Wife's attorney filed an unverified motion reciting that IRS had levied on her automobile for a community debt; that Husband had failed to comply with the decree and that he should be adjudged in contempt.

D. On September 9, 1969, the court entered an order finding Husband had not complied with the decree and was in contempt; sentencing him to thirty days in jail, but suspending sentence for sixty days to enable him to comply with the decree; amending the decree in certain respects and directing Husband to sell certain separate personalty (sporting goods, furniture, appliances) and apply the proceeds upon the obligation to IRS, together with certain cash which he had on his person.

E. Wife filed another motion on December 2, 1969, reciting that she had paid IRS $1,113.84; that Husband had failed to comply with the September 9 order and should be adjudged in contempt or purge himself by making repayment to Wife.

F. Husband's discharge in bankruptcy was dated December 4, 1969.

G. A hearing was held on December 18, 1969. On March 11, 1970, the court made findings reciting the chronology of events; that Husband had claimed and was allowed in the bankruptcy proceeding an exemption in regard to the separate personalty the court had ordered him to dispose of as described in "D" above; that he had not disposed of that property and had not paid over the cash also mentioned in "D." It concluded that he was in contempt "and should be required to serve the 60-day jail sentence heretofore imposed." (Only thirty days had been imposed.)

H. Also on March 11, 1970, an order issued ordering Husband confined for sixty days and granting Wife judgment against Husband for the $1,113.84.

This appeal followed.

The trial court concluded that the community debt of the parties to the government was not discharged by the bankruptcy proceedings. We agree. Section 17a(1) of the Bankruptcy Act, 11 U.S.C.A. § 35, provides in pertinent part:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as

(1) are taxes which became legally due and owing by the bankrupt to the United States * * * within three years preceding bankruptcy: * * * And provided further, that a discharge in bankruptcy shall not release or affect any tax lien;

(2) are liabilities * * * for alimony due or to become due, or for maintenance or support of wife or child, * * *."

The parties do not assert that the tax obligation was discharged, but devote much of their briefs to a discussion of subsection (2) regarding alimony, Wife asserting and Husband denying that the direction of the trial court to Husband to pay community debts was, in truth, in the nature of an award of alimony. Both parties rely on Nesbit v. Nesbit, 80 N.M. 294, 454 P.2d 776.

In Nesbit, the divorce decree which preceded the husband's bankruptcy required Mr. Nesbit to pay Mrs. Nesbit $275.00 per month as child support, awarded her the family home and automobile and ordered him to pay the community debts. Upon appeal, this court sensed a question, probably from the disparity of awards to the parties by the decree, as to whether the decree simply divided the property or took into account alimony and additional support money. The court said:

"An order to pay the community debts may be in the nature of an award of alimony or support money not dischargeable in bankruptcy. 11 U.S.C. § 35. The answer turns on whether the requirement was made as a part of a determination by the court of the amount reasonably required as support and maintenance for the wife and children. If such was the purpose and intent, it was exempt from discharge. If, on the other hand, it was a part of a property settlement, it was discharged."

Every feature that apparently led the court to consider the true nature of the court's direction to Mr. Nesbit to pay the community debts, i. e., the matter of child support and the disparity of awards, is lacking here. The record contains no reference to alimony or support and alludes to no fact or legal principle appropriate to an award of alimony or consideration of that issue.

The trial court stated on more than one occasion in the record that it was dividing or had divided the property. Thus, we are led directly to the conclusion that the trial court simply divided property and did not award alimony.

Although we have agreed with Husband's basic position that the trial court's order directing him to pay the community debts was not an award of alimony, we do not thereby resolve matters in his favor.

There is a surprising lack of authority regarding situations in which a bankrupt has been directed by a prior divorce decree to pay a nondischargeable tax obligation. We have examined the cases cited by the parties in their briefs and by the court in Nesbit and find them to be distinguishable. The parties frankly state that they have found no case directly in point, nor have we.

All concede that the tax obligation was not discharged by the bankruptcy. It was owed by both parties before the discharge; and, so far as IRS was concerned, it was owed by both after. By no alchemy has the bankruptcy proceeding affected the parties' obligation to the government. Why should Wife pay the taxes rather than Husband? Husband suggests no answer to this riddle. He simply ignores his obligation to the government and urges that his "debt" to Wife was discharged.

We are not convinced Husband owed a debt to Wife at the time of the decree. The older, and perhaps more technical cases define "debt" as being a contractual obligation to pay a fixed sum of money at an ascertainable time. State ex rel. Beach v. Board of Loan Com'rs, 19 N.M. 266, 275, 142 P. 152, 155. Certainly there was no debt owed by Husband to Wife in this sense. If we accept the broadest connotation of the word as meaning simply money

owed, the same is true. Husband owed no debt to Wife. Rather, they both owed the government. Husband's present problem arises not from a debt owed to Wife, but rather from an in personam order contained in the divorce decree requiring him to pay a sum of money owed by both parties to a third entity, viz., IRS.

We hold that Husband's nondischargeable obligation to IRS, coupled with the in personam direction of the trial court contained in the divorce decree to pay it, was not discharged or even affected by the bankruptcy proceeding.

Finally, Husband asserts that his sentence was improvident because he was financially unable to comply with the court's directions.

Inability to pay is, of course, a good defense. Horcasitas v. House, 75 N.M. 317, 404 P.2d 140; Wilson v. Wilson, 45 N.M. 224, 114 P.2d 737; Sears v. Sears, 43 N.M. 142, 87 P.2d 434; Andrews v. McMahan, 43 N.M. 87, 85 P.2d 743, 120 A.L.R. 697. The burden of proving the defense rests upon him who asserts it in alimony cases, Armijo v. Armijo, 29 N.M. 15, 217 P. 623, and in child support cases, Wilson v. Wilson, supra. No reason occurs to us why the burden should be elsewhere in a case involving noncompliance with an in personam order to pay community debts.

Husband testified, and his testimony was uncontroverted, that he had been constantly unemployed since the time of the decree. There was no other evidence that he was unable to comply with the decree. He requested a finding of fact that due to no fault on his part, he had been unemployed at all times since the decree and was at all times unable to perform the obligation imposed upon him by the decree to pay the community debts. This finding was refused by the court and the refusal is assigned as error.

The ultimate fact essential to the establishment of the defense under consideration is inability to pay. The fact of unemployment is merely evidentiary. Hence the material finding requested by Husband was a blend of the ultimate fact of inability to pay, as to which there was no direct evidence, or at least of which the trial court was unconvinced, and of the evidentiary fact of unemployment. Trial courts are not required to make findings of evidentiary facts. Rule 52(B) (a) (2) [§ 21–1–1 (52) (B) (a) (2), N.M.S.A., 1953]; Galvan v. Miller, 79 N.M. 540, 445 P.2d 961; State ex rel. State Highway Comm. v. Pelletier, 76 N.M. 555, 417 P.2d 46. Inasmuch as Husband carried the burden of proof, the court's refusal to find his inability to pay is deemed an adverse finding on that issue. Lopez v. Barboa, 80 N.M. 338, 455 P.2d 842; Gallegos v. Wilkerson, 79 N.M. 549, 445 P.2d 970.

Further, it is to be recalled that the trial court, after having adjudged Husband to be in contempt by the September 9, 1969 order, granted him, for a period of sixty days, an opportunity to purge himself of contempt. The court then amended the decree to provide that certain of Husband's separate personalty be sold and the proceeds, together with cash on his person, be applied to the IRS debt.

In its decision made in conjunction with the order from which this appeal is taken, the court found that Husband had not complied with the requirements of the September 9 order to sell the personalty and apply the proceeds, together with the cash, to the IRS debt. This finding was based upon Husband's uncontroverted testimony. Under these circumstances, we are not disposed to disturb the trial court's actions based upon any asserted inability on the part of Husband to pay IRS.

The trial court's order will be affirmed.

It is so ordered.

COMPTON, C. J., and McMANUS, J., concur.