431 A.2d 300

**Merlene JORDAN, Appellant,**

v.

**Joseph GORE.**

Superior Court of Pennsylvania.

Submitted April 16, 1980.

Filed June 12, 1981.

**6.** See *North Carolina v. Butler*, 441 U.S. 369, 372, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286 (1979).

**7.** *Miller,* supra, 490 Pa. at 473, 417 A.2d at 136.

88

Marilyn Woolery, Erie, for appellant.

Michael J. Veshecco, Erie, for appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This appeal was filed following the dismissal of the Plaintiff-Appellant's Petition for Support by the Court of Common Pleas of Erie County. We believe that dismissal was erroneous and shall reverse.

The record shows that in August, 1967, the Appellant instituted a criminal action against the Defendant-Appellee charging him with failure to support a bastard child. The

Appellant sought such support for a child born to her on March 18, 1967. On February 15, 1968, a trial on the charge was scheduled, and a jury empaneled. However the criminal charge was dismissed as the Appellant did not appear.

On August 15, 1978, the Appellant instituted the instant civil action against the Appellee for support for the same child. Appellant's Petition for Support alleged, *inter alia*, contributions by the Appellee to the child's support within the two years immediately preceding the commencement of the action.[1]

The lower court, on May 29, 1979, granted the Appellee's Petition to Dismiss. The lower court's statement of reasons for its action is extremely brief. In it, the trial judge merely expresses the conclusion that the Appellant's civil action created a situation of double jeopardy for the Appellee. The trial judge also added that he was "...in accord with..." a memorandum of law filed by the Appellee in support of his Petition to Dismiss. The Appellee's memorandum was itself very brief. In addition to raising the double jeopardy argument, the Appellee noted in that document the contentions that the Appellant's original action was quasi-criminal in nature and that: "Therefore, there is (sic) collat-

1. Of particular relevance to the instant case are the provisions set forth in the Act of April 28, 1978, No. 46, effective sixty days thereafter, which added subsections (e) and (f) to former Section 5 of the Act of July 13, 1953, P.L. 431, No. 95, from which 42 Pa.C.S.A. § 6704, the civil support statute applicable in this case, was derived. These subsections, which are set forth in the Official Note following 42 Pa.C.S.A. § 6704, provide:

   (e) All actions commenced under this section shall be brought within six years of the birth of the child, except where the reputed father shall have voluntarily contributed to the support of the child or shall have acknowledged in writing his paternity, in which case an action may be brought at any time within two years of any such contribution or acknowledgment by the reputed father.

   (f) An action commenced under this act shall be a civil action in accordance with the Rules of Civil Procedure. Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be by the court without a jury unless either party demands trial by jury. The trial, whether or not a trial by jury is demanded, shall be a civil action and there shall be no right to a criminal trial on the issue of paternity. The burden of proof shall be by a preponderance of the evidence.

eral estoppel, double jeopardy, autrefois acquit and res judicata." Further, in his legal memorandum, Appellee cited, out of context, only part of § 6704, when he recited that: "All actions commenced under this section shall be brought within SIX (sic) years of the birth of the child. . ." Appellee did not specifically mention that he was raising any claim of a statute of limitations bar, but we can only guess that he thereby attempted to do so. Because of the brevity of the lower court's written explanation of reasons for its ruling, and the words used, we must assume that it found all of these contentions to be valid in supporting the dismissal of the Appellant's civil support action. However, we find that every contention advanced by the Appellee in the lower court is lacking in even arguable merit.

■ The first issue to be resolved on the appeal is whether or not the Appellant's civil action against the Appellee for support of a child is barred by the double jeopardy clause of the Fifth Amendment to the United States Constitution, as a result of the prior dismissal of her criminal action against the Appellee for neglect to support the same child. It has been long-established in our law that a criminal prosecution does not bar a subsequent civil or administrative proceeding based upon the same set of facts, nor does a judgment rendered therein have any probative value in subsequent proceedings beyond the mere fact of its rendition. See *Nowack v. Orange*, 349 Pa. 217, 36 A.2d 781 (1944); *Commonwealth v. Funk*, 323 Pa. 390, 186 A. 65 (1936). In *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1937), the Supreme Court held that Congress could impose civil and criminal sanctions with respect to the same act or omission as the double jeopardy clause of the Fifth Amendment merley prohibits a second *criminal* punishment for the same offense. While the Appellee contended that the original non-support proceeding instituted by the Appellant was only "quasi-criminal", and not criminal, we can perceive no purpose in resolving the distinction, as the prohibition against double jeopardy provides no further support for the Appellee's position, even if it were considered to be quasi-

criminal. The mere fact that the Appellant's instant action is clearly civil precludes any application of the rule against double jeopardy.

We next examine the Appellee's claims that the doctrines of res judicata and collateral estoppel provide support for the dismissal of the Appellant's civil support action. "Res judicata literally means a matter adjudged or a thing judicially acted upon or decided. From long usage it has come to encompass generally the effect of one judgment upon a subsequent trial or proceeding. Two quite distinct aspects are included: first, the effect of a judgment in a subsequent action between the parties based upon *the same cause of action*; second, the effect on the parties in a trial on *a different cause of action." McCarthy v. Township of McCandless*, 7 Pa.Cmwlth. 611, 616–617, 300 A.2d 815, 819 (1973) (footnote omitted; emphasis in original). The first effect is known as merger and bar, "technical" res judicata, or simply "res judicata"; the second is known as collateral estoppel. *Martin v. Poole*, 232 Pa.Super. 263, 268, 336 A.2d 363, 366 (1975). For res judicata to apply, there must be a concurrence of four conditions: (1) Identity in the thing sued upon or for; (2) Identity of the cause of action; (3) Identity of persons and parties to the action; and (4) Identity of the quality or capacity of the parties suing or sued. *Stevenson v. Silverman*, 417 Pa. 187, 190, 208 A.2d 786, 787–788 (1965), cert. denied, 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76 (1965). A judgment *on the merits* in a prior suit involving the same parties or their privies, under the doctrine of res judicata, bars a second suit based upon the same cause of action, while under the doctrine of collateral estoppel, such judgment precludes relitigation of issues *actually litigated and determined* in the prior suit, regardless of whether it was based upon the same cause of action as the second suit. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). In the instant situation, neither doctrine provides support for the Appellee's position. It is well-established that if particular conduct constitutes a crime and is also a ground for civil

liability, an acquittal in a trial for the criminal offense does not bar the institution of a civil action, nor even constitute evidence of innocence in the civil action, upon the rationale that proof must be established beyond a reasonable doubt in the criminal case, while in civil cases, a preponderance of the evidence will suffice. See *Helvering v. Mitchell, supra; Commonwealth v. Funk, supra; Commonwealth v. Royer*, 213 Pa.Super. 17, 245 A.2d 716 (1968); See also *Simpson v. Robinson*, 238 Pa.Super. 555, 361 A.2d 387 (1976) concerning the question of the admissibility of evidence of the criminal acquittal in subsequent civil proceedings. Thus, the doctrines of res judicata and collateral estoppel provide no support for the lower court's dismissal of Appellant's civil action.

■ The Appellee's memorandum of law to the lower court contained a mere reference to the doctrine of autrefois acquit. Quite simply, that doctrine sets forth a defense in *criminal* proceedings, based upon an acquittal in an earlier criminal prosecution of the same defendant. See *Commonwealth v. Moon*, 151 Pa.Super. 555, 30 A.2d 704 (1943). The doctrine provides no basis for the Appellee's attempt to avoid civil liability in the instant case.

■ Finally, we cannot affirm the lower court's dismissal of this action based upon Appellee's citation of part of the support statute which states that such actions may only be brought within six years of the birth of the child for whom support is sought. The remainder of that statute further permits such suits to be brought "... at any time within two years of any such contribution [of support to the child] or acknowledgment [of paternity] by the reputed father." As noted earlier, the Appellant's Petition for Support alleged contributions by the Appellee to the child's support within a two year period immediately preceding the institution of her action. Thus, the dismissal of her Petition, without any examination of the evidence, on the specific basis apparently argued by Appellee in his memorandum, was not correct.

The lower court's order of dismissal was erroneous and is hereby reversed. This case is remanded to the lower court for further proceedings in the case. This Court will not retain jurisdiction in the case.